**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

FILED

DEC − 2 2010

CLERK, U.S. DISTRICT COURT
[illegible]

CURLY HILL,

Plaintiff,

v.                                                    Case No. 4:10cv8

MICHAEL J. ASTRUE, Commissioner of
the Social Security Administration,

Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Curly Hill ("Hill"), brought this action under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB").

This action was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), by order of reference filed April 7, 2010. (ECF No. 7). For the reasons expressed herein, the Court RECOMMENDS that the Commissioner's decision be AFFIRMED.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On February 8, 2005, Hill applied for DIB under Title II of the Social Security Act ("Act"). (R.[1] at 48-50.) Hill was born in 1944 and alleged an onset of disability as of January 1, 1998, due

---

[1] "R." refers to the administrative record of proceedings relating to this case. The administrative record was filed with the Court under seal. (ECF No. 6).

to chronic anxiety and Post Traumatic Stress Disorder ("PTSD"). (R. at 48). Hill has a ninth grade education, (R. at 511), and has worked in the past as a roofer and sandblaster with his last reportable earnings in 1996. (R. at 284, 426).

Hill's application was denied initially on July 25, 2005 (R. at 26-37), and upon reconsideration on February 27, 2006. (R. at 38). On February 27, 2006, Hill requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration. (R. at 39). On December 6, 2006, Hill appeared in Newport News, Virginia, and testified at a hearing before an ALJ. (R. at 407). Hill was represented by counsel at the hearing. (R. at 27).

On March 28, 2007, the ALJ issued a written decision finding that Hill was not disabled within the meaning of the Act. (R. at 404-10). The ALJ concluded that Hill had not been under a disability at any time from January 1, 1998, the alleged onset date, through September 30, 2000, the date last insured. (R. at 410). On August 28, 2007, the Appeals Council denied Hill's request for review. (R. at 5-8). On October 26, 2007, Hill sought judicial review of the Commissioner's decision. (R. at 400).

In an opinion and order dated February 6, 2009, the United States District Court for the Eastern District of Virginia approved and adopted a December 31, 2008, Report and Recommendation of United States Magistrate Judge Tommy E. Miller, granting Hill's

motion for summary judgment in part, denying the Commissioner's motion for summary judgment, and remanding the matter for future proceedings so that upon remand, an ALJ could (1) obtain further records from the Virginia Department of Corrections; (2) fully consider evidence in the record placing the date of Hill's assault prior to September 30, 2000; (3) determine the applicability of Social Security Ruling ("SSR") 83-20. (R. at 382-99). On February 21, 2009, the Appeals Council vacated the ALJ's March 28, 2007, decision and remanded the case to another ALJ. (R. at 381).

On May 20, 2009, Hill appeared in Norfolk, Virginia, and testified at a hearing before an ALJ. (R. at 497-529). Hill was represented at the hearing. (R. at 367). On July 29, 2009, the ALJ issued a written decision finding that Hill was not disabled within the meaning of the Act. (R. at 364-71). The ALJ concluded that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment prior to the date last insured. (R. at 363). The ALJ therefore concluded, at step two in the sequential analysis, that Hill was not under a disability as defined in the Act at any time from January 1, 1998, the alleged onset date, through September 30, 2000, the date last insured. (R. at 371). On November 20, 2009, the Appeals Council refused to assume jurisdiction for the case (R. at 350-52).

Hill brought the instant action seeking judicial review of the decision of the Commissioner denying his claims for DIB. Hill

3

filed his complaint on January 15, 2010, (ECF No. 1), which the Commissioner answered on April 6, 2010. (ECF No. 5). Hill filed a Motion for Summary Judgment with a memorandum in support on May 7, 2010. (ECF No. 12). The Commissioner filed a Motion for Summary Judgment and an opposition to Hill's Motion for Summary Judgment with a memorandum in support on June 16, 2010. (ECF No. 18). Neither party indicated special circumstances requiring oral argument in this matter; therefore, the case is deemed submitted for decision based on the memoranda. See Fed. R. Civ. P. 78(b); Local Civ. R. 7(J).

## II. STANDARD FOR SUMMARY JUDGMENT

The Court shall grant summary judgment if, viewing the record as a whole, it concludes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Facts are deemed material if they might affect the outcome of the case. Celotex Corp., 477 U.S. at 322-27. In other words, the moving party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences favorable to the non-movant. Id.

4

In deciding a summary judgment motion, the Court must "view[]
the record as a whole in the light most favorable to the non-
movant." Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,
763 F.2d 604, 610 (4th Cir. 1985). If "the evidence . . . is so
one-sided that one party must prevail as a matter of law," the
Court should grant summary judgment in that party's favor.
Anderson, 477 U.S. at 251-52. Moreover, summary judgment must be
granted where the non-moving party "fails to make a showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden of
proof at trial," Celotex, 477 U.S. at 322, as the non-moving party
is required to "set out specific facts showing a genuine issue for
trial" with respect to that element, Fed. R. Civ. P. 56(e)(2).

When confronted with cross-motions for summary judgment, "the
standards upon which the Court evaluates the motions for summary
judgment do not change." Taft Broad. Co. v. United States, 929
F.2d 240, 248 (6th Cir. 1991). "[T]he court must review each
motion separately on its own merits 'to determine whether either of
the parties deserves judgment as a matter of law.'" Rossignol v.
Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris
Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). "When
deciding cross-motions for summary judgment, a district court
retains the responsibility to examine the record to ensure that no
disputed issues of fact exist, despite the parties' assurances to

5

that effect." Kavanaugh v. City of Phoenix, 25 F. App'x 516, 517 (9th Cir. 2001) (citing Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001)).

### III. STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION

The Commissioner ultimately held that Hill was not under a disability within the meaning of the Act.    Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is "specific and narrow." Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision.    42 U.S.C. § 405(g); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam), superceded in non-relevant part by 20 C.F.R. § 404.1517(d)(2); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter, 993 F.2d at 34 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner has the duty "to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456 (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)). The Court

6

"do[es] not conduct a de novo review of the evidence" or of the Commissioner's findings. Schweiker, 795 F.2d at 345. In reviewing for substantial evidence, the Court "do[es] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Id. (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. Richardson, 402 U.S. at 401. The issue before this Court, therefore, is not whether Hill is disabled, but whether the Commissioner's finding that Hill is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See id.; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law.").

## IV. **ANALYSIS**

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Titles II and XVI of the Act as the "inability to do any substantial gainful activity by

7

reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); <u>see also</u> 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To meet this definition, the claimant must have a severe impairment that makes it impossible to do previous work or any other substantial gainful activity[3] that exists in the national economy. 20 C.F.R. §§ 404.1505(a), 416.905(a); <u>see also</u> 42 U.S.C. §§ 423(d)(2)(A), 1382C(a)(3)(B).

## A. Sequential Disability Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth at 20 C.F.R. §§ 404.1520 and 416.920. <u>See</u> <u>Hall v. Harris</u>, 658 F.2d 260, 264-65 (4th Cir. 1981). Under this process, the ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (i.e., whether the claimant is working). If so, the claimant is <u>not</u> disabled and the inquiry is halted.

---

[2] "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

[3] "Substantial gainful activity means work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910.

20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

(2) Whether the claimant has a severe impairment. If not, the claimant is <u>not</u> disabled and the inquiry is halted. <u>Id.</u> §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

(3) Whether the impairment meets or equals the medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant <u>is</u> disabled and the inquiry is halted. <u>Id.</u> §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is <u>not</u> disabled and the inquiry is halted. <u>Id.</u> §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

(5) Whether the claimant is able to perform any other work considering both his residual functional capacity[4] and his vocational abilities. If so, the claimant is <u>not</u> disabled. <u>Id.</u> §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

In this case, the ALJ decided at step two of the analysis that Hill was not disabled.

---

[4] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptoms (e.g., pain). <u>See</u> 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

## B. Steps One and Two

At step one of the analysis, the ALJ determined that Hill had not engaged in substantial gainful activity from his alleged onset date of January 1, 1998 through his date last insured of September 30, 2000. (R. at 363). At step two, the ALJ determined that there were no medical signs or laboratory findings to substantiate the existence of any medically determinable impairment. (R. at 371).

### 1. The ALJ's Step Two Analysis

Hill alleged that he was suffering from a disability due to chronic anxiety and PTSD which was caused by a sexual assault that he suffered while incarcerated.[5] The ALJ determined that there was no evidence of mental health treatment or any references to physical or sexual assault in the records obtained covering treatment from September 11, 1998, through June 7, 2002. The ALJ therefore concluded that there was no evidence of any medically determinable impairment between January 1, 1998, and September 30, 2000, the date last insured. The ALJ examined medical history reports and records which contain Hill's medical history for the period of time when Hill was incarcerated. The ALJ examined treatment records subsequent to Hill's release from incarceration. Finally, the ALJ considered Hill's testimony at the May 20, 2009,

---

[5] It is not clear exactly when this assault was to have occurred. Hill testified that the assault occurred in the early part of 2000. However, his application for benefits lists an onset date of January 1, 1998.

10

hearing.

### a. Hill's Testimony

Hill testified that he was assaulted by three inmates while in
the custody of a state prison facility in the early part of 2000.
(R. at 501, 503, 513-14). Hill testified that he did not report the
assault to any medical professionals who examined him while he was
incarcerated because he "chickened out". (R. at 506, 515-16). Hill
testified that he told prison medical staff that he had a toothache
in order to receive pain medication for the physical pain after the
assault. (R. at 517). Hill testified that he told a Dr. Parsons
about the assault and his symptoms after he had been released from
incarceration. (R. at 518). Hill testified that the only medical
attention that he received while in prison which related to the
assault was when he pretended to have a toothache in order to
obtain pain medication. (R. at 519). Hill testified that he was
receiving some medication that he believed was for depression at
some point while in prison. (R. at 520). Hill testified that he
told prison staff that he was having issues related to memories of
killing his father back when Hill was seventeen. (R. at 521). Hill
testified that he has been having recurring nightmares since the
assault in prison. (R. at 524).

### b. Review of the Prison Medical Evidence

The ALJ considered the medical records obtained from the
Virginia Department of Corrections for the period during which Hill

11

was incarcerated which included the period between January 1, 1998, and September 30, 2000.

A Mental Health Screening form was prepared by Dr. Robert E. Fisher, a prison psychologist, on July 29, 1998. This form states that Hill was not displaying any symptoms of mental disorder, was not receiving any psychotropic medications, was not diagnosed with any mental health impairments, and had not received any mental health treatment within the previous five years. (R. at 448).

A Mental Health Services Screening Form was prepared by Dr. Terry Callison, a prison psychologist, for an evaluation of Hill on August 21, 1998. The form demonstrates that Hill denied any prior mental health treatment or psychotropic medication. Dr. Callison found no documented or reported mental health services needs within the last five years and that Hill did not have any mental health impairments. (R. at 446-47).

A Mental Health Coding Classification Review Form signed by Dr. T. Matters and dated August 3, 1999, shows a classification of MH-0 indicating no documented/reported history of mental health services needs/treatment within the last five years. (R. at 181).

Hill saw a psychologist on June 26, 2000, after prison nursing staff reported a possibility of depression. Hill explained to the psychologist the reason for his lack of bathing and reported some anger and depression due to family issues and his feelings towards being unjustly convicted. The psychologist found that Hill did not

display any overt psychiatric symptoms and found that Hill was not severely depressed. (R. at 444).

On September 8, 2000, Hill was screened by a prison psychologist who found no documented or reported mental health services needs or treatments within the past five years and concurred with the finding that Hill did not have even a minimal mental health impairment. (R. at 478).

On September 7, 2001, Hill had a psychological consultation. This consultation occurred because Hill had become upset with a prison nurse and informed the nurse that he had killed his father, stabbed his girlfriend, and needed medications to sleep at night. (R. at 473). The Consultation Form states that Hill's self-medication had been suspended because he had been having difficulties sleeping because of memories and nightmares concerning stabbing his father to death, stabbing his girlfriend in the head, and being convicted and in prison for sexual assault. Hill was allowed to vent and not permitted to self-medicate for a short period. (R. at 180).

A Mental Health Coding Classification Review Form dated June 7, 2002, characterized the consultation Hill had received on September 7, 2001, as a "brief" psychological evaluation and concluded that Hill's assigned mental health classification after that evaluation, MH-0 for no documented/reported history of mental health services needs/treatment within the last five years, was

13

still appropriate. (R. at 442).

### c. **Review of the Post-Prison Evidence**

Hill's records show that Hill was seen by Dr. Michael Parsons on October 5, 2004, during which time Hill reported to Dr. Parsons that he had recently been released from prison and had been raped about five years earlier while incarcerated. (R. at 237). On October 13, 2004, Dr. Parsons documented that Hill reported that he was suffering from depression and told Dr. Parsons that he had been abused while in prison. (R. at 238). In response, Dr. Parsons diagnosed Hill as suffering from depression and prescribed Prozac. (R. at 238). On November 22, 2004, Dr. Parsons documented that Hill reported continued depression and anger issues while once again reporting that he was raped in prison. (R. at 235). Dr. Parsons told Hill to talk with a crisis counselor and re-prescribed Prozac. (R. at 235).

On December 2, 2004, Dr. William Yelverton completed a Clinical Assessment Summary. (R. at 288-89). Hill reported that his depression started eight years earlier when he was sentenced to prison. Hill reported a violent and abusive upbringing. Hill also told Dr. Yelverton that he had been abused in prison. Hill appeared depressed and extremely angry during the consultation. Dr. Yelverton concluded that Hill could be treated through outpatient care and that it was expected that Hill would be able to manage his anger and depressed moods. (R. at 88-89). Dr. Yelverton also

14

completed a Diagnosis - Multiaxial Assessment in which he diagnosed Hill with a major depressive disorder, recurrent severe, without psychotic features along with Antisocial Personality Disorder. (R. at 294).

On December 28, 2004, Dr. Baltej S. Gill prepared a Psychiatric Evaluation of Hill. (R. at 283-85). Hill's main complaints were nightmares and feelings of depression. Hill reported being sodomized by three men which caused injuries to his rectum. Hill reported nightmares involving his attackers and depression and anger issues caused by his past and present living situations. Dr. Gill diagnosed Hill with a depressive disorder, adjustment disorder, and personality disorder with antisocial and paranoid personality-type traits. Dr. Gill prescribed Triavil and scheduled a follow-up evaluation. (R. at 283-85).

On January 26, 2005, Dr. Parsons completed an evaluation of Hill which documents that Hill requested that Dr. Parsons give a "statement" regarding disability due to his prison rape victim history. (R. at 232). Dr. Parsons reported after his evaluation of Hill that it was too early to say anything about a permanent disability until it was determined how he progressed under current treatment. (R. at 232).

On February 2, 2005, a Medication Evaluation form was prepared by Dr. Joselito B. Morales. (R. at 280-81). Dr. Morales examined Hill, who reported continued nightmares, depression, and anger with

15

regard to his assault while in prison. Dr. Morales confirmed Dr. Gill's diagnosis but changed Hill's medication from Triavil to Seroquel and prescribed Prozac as an antidepressant and as treatment for PTSD. (R. at 280).

On February 17, 2005, Dr. Yelverton documented a progress evaluation performed with Hill. (R. at 277-78). Hill reported feeling better and that his medications were helpful. (R. at 278). On September 20, 2005, Dr. Yelverton completed a Comprehensive Outpatient Services Progress Note which stated that Hill was dealing with a depressed mood. (R. at 251). On November, 1, 2005, Dr. Yelverton reported on a Progress Review Summary that Hill's issues with depression appeared ongoing. (R. at 249).

On November 7, 2005, Dr. Yelverton prepared a Physical Residual Functional Capacity Evaluation which reported that Hill's problems with PTSD were due to his assault while incarcerated. (R. at 213). Dr. Yelverton concluded that Hill was incapable of even low stress jobs due to problems resulting from unresolved trust issues. Dr. Yelverton also concluded that Hill would continue to experience symptoms severe enough to interfere with his ability to perform even simple work and would require frequent absences from work due to his impairments. (R. at 215-16).

On December 20, 2005, Dr. Morales prepared a Medication Evaluation form. (R. at 246). After examining Hill, Dr. Morales concluded that Hill's signs and symptoms of PTSD and Mood Disorder

16

were significantly improved. (R. at 246). On October 11, 2006, Dr. Morales prepared a Quarterly Medication Evaluation after meeting with Hill. (R. at 339). Hill reported that he had no signs or symptoms of depression and Dr. Morales concluded that Hill was doing very well on his medications. Dr. Morales concluded that Hill's Mood Disorder was in remission. (R. at 339).

On February 15, 2006, Dr. Robert Gerstle, a state agency psychological consultant, prepared two Psychiatric Review Technique Forms and a Mental Residual Functional Capacity Assessment. (R. at 296-325). Dr. Gerstle concluded that there was insufficient evidence to show a disabling condition prior to Hill's date last insured of September 30, 2000. (R. at 313, 325). Dr. Gerstle concluded that at the time of his evaluation of Hill's current medical records, Hill was suffering from medically supported impairments related to mental issues and PTSD which caused Hill to be unable to handle stress on the job or respond appropriately to criticism from supervisors. (R. at 299). Dr. Gerstle concluded that Hill's current inability to work was supported by the medical evidence. (R. at 299-300, 303, 305, 307).

## C. ALJ's Findings

At step two of the analysis, the claimant bears the burden to prove that he had a severe impairment. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512. The ALJ found that Hill did not meet this burden and could not show a severe impairment on or before his date

17

last insured.  Therefore, the ALJ found that Hill is not disabled within the meaning of sections 216(i) and 1614(a)(3)(A) of the Social Security Act.

## D. Hill's Claims

Hill challenges the ALJ's determination on two grounds. First, Hill argues that the ALJ failed to consider or at least explain the weight given to the testimony of Hill at the administrative hearing in reaching his findings.  Second, Hill argues that the ALJ erred by failing to consider if SSR 83-20 should be applied to relate Hill's onset date back to the date of his sexual assault in prison which Hill alleges occurred prior to his date last insured. As discussed below, the Court FINDS that the ALJ was not required by the specific facts of this case to evaluate or explain the weight given to Hill's testimony and that SSR 83-20 is not applicable to this case.  The Court also FINDS that there is substantial evidence to support the ALJ's finding that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured. Accordingly, the Court RECOMMENDS that the ALJ's decision be AFFIRMED.

## 1. Hill's Testimony

The process by which the Social Security Administration determines whether a claimant is suffering from a medical impairment which could qualify as a severe impairment under the regulation is described in 20 C.F.R. § 404.1529.  It is explained

18

to claimants that "statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled." Id. at (a).

Therefore, before analyzing the alleged symptoms and the cause of those symptoms provided by Hill in his testimony, the ALJ was required to first find the existence of medical signs and laboratory findings which could then be substantiated by Hill's testimony. Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996)("It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.").

The ALJ did not find any medical signs or laboratory findings which showed the existence of a medically determined impairment. This conclusion is supported by the record. It is not disputed that Hill's date last insured was September 30, 2000. None of the

medical records which predate the date last insured suggest any type of psychological impairment being suffered by Hill. Numerous records from the Virginia Department of Corrections show mental health screenings which grade Hill as having no documented mental health issues. There also are no records which suggest any treatment for a sexual assault or even demonstrate that Hill ever reported such an event. Although Hill now testifies that his failure to report was due to a fear of reprisal, the ALJ is required to have documented medical signs and laboratory findings which can demonstrate an impairment before the date last insured. The ALJ's finding that there is no such evidence is supported by substantial evidence in the record.

## 2. Onset Date

SSR 83-20 states that "[f]or disabilities of traumatic origin, onset is the day of the injury if the individual is thereafter expected to die as a result or is expected to be unable to engage in substantial gainful activity (SGA)(or gainful activity) for a continuous period of at least 12 months." This case was remanded once before with the instruction to consider the applicability of SSR 83-20 and Hill now argues that the ALJ failed to take this ruling into account. However, the findings of the ALJ, which are supported by substantial evidence, render SSR 83-20 inapplicable to the instant case.

SSR 83-20 applies when there is a "disabilit[y] of traumatic

origin." While Hill's alleged impairment would likely qualify as having a traumatic origin, it is required that the ALJ find that Hill suffers from a disability before SSR 83-20 has any effect. Gravley v. Barnhart, No. Civ.A. 7:05CV00074, 2005 WL 2429961, at *3 (W.D. Va. Sept. 29, 2005). SSR 83-20 only would apply if the ALJ completed the five-step sequential analysis outlined above, concluded that Hill was disabled, and needed to resolve the question of onset date. See Credle v. Apfel, 4 Fed. App'x 20, 23-24 (2d Cir. 2001).

Therefore, even if the ALJ had agreed with Hill's therapist who concluded that Hill's current medical issues with PTSD and Mood Disorders are a result of his assault while incarcerated (R. at 213), SSR 83-20 would still not apply. This is because there are no medical signs or laboratory findings to substantiate that at the time of the injury, in this case the sexual assault, Hill was expected to die as a result or was expected to be unable to engage in substantial gainful activity for at least twelve months. Hill's therapist made a causal connection between Hill's current medical conditions and the sexual assault, but the therapist did not opine that Hill has been suffering from these medical conditions since the sexual assault occurred. In fact, there is no medical evidence that Hill suffered from any disabling mental impairments between the traumatic event cited by Hill and his date last insured.

In this case, the ALJ's conclusion that Hill did not suffer

from a medically determinable severe impairment is supported by substantial evidence. Therefore, the ALJ was not required to consider the applicability of SSR 83-20.

## E. Conclusion

For the reasons discussed above, the Court FINDS that the ALJ was not required to evaluate or explain the weight given to Hill's testimony and that SSR 83-20 is not applicable to this case. The Court also FINDS that there is substantial evidence to support the ALJ's finding that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured.

## V. <u>RECOMMENDATION</u>

For the foregoing reasons, the Court RECOMMENDS that Hill's Motion for Summary Judgment (ECF No. 12) be DENIED, that Defendant's Motion for Summary Judgment (Doc. No. 18) be GRANTED, and that the decision of the Commissioner be AFFIRMED.

## VI. <u>REVIEW PROCEDURE</u>

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1):

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, <u>see</u> 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), computed pursuant to

Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's specific objections within fourteen (14) days after being served with a copy thereof. <u>See</u> Fed. R. Civ. P. 72(b)(2).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140, 153-54 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433, 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).


United States Magistrate Judge

Norfolk, Virginia
December 2, 2010

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Charlene A. Morring
Montagna Klein Camden LLP
425 Monticello Ave
Norfolk, Virginia 23510
COUNSEL FOR Hill

Anita Kay Henry
United States Attorney Office
101 W Main St
Suite 8000
Norfolk, VA 23510
COUNSEL FOR DEFENDANT

Fernando Galindo, Clerk

By: ___/s/ Rox_____

Deputy Clerk

December 2, 2010